# United States Tax Court

T.C. Memo. 2025-130

MISSION ORGANIC CENTER, INC.,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

———————

Docket No. 9456-23L.                    Filed December 16, 2025.

———————

*Joseph A. Broyles*, for petitioner.

*S. Penina Shadrooz* and *Yervant P. Hagopian*, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HOLMES, *Judge*: In today's reviewed opinion, *Mission Organic Center, Inc. v. Commissioner*, Nos. 6937-23L, et al., 165 T.C. (Dec. 16, 2025), the Court analyzes the notices of determination that sustain enforced collection of the 2016–20 tax debts of Mission Organic Center, Inc.[1] The Commissioner also determined to collect Mission's tax debt for 2021. Our analysis of that last determination is different from that for its earlier tax years, and much easier.

FINDINGS OF FACT

In 2021, Mission had gross receipts of more than $16 million, cost of goods sold of more than $14 million, and claimed expenses that the

———

[1] Mission is a California corporation whose principal place of business is in California. Appellate venue is presumptively in the Ninth Circuit. *See* § 7482(b)(1)(B). Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

[*2] Commissioner disallowed under section 280E of nearly $3.5 million. Its resulting tax bill was $331,517. It couldn't pay and submitted an offer-in-compromise to settle its tax debts for all the years from 2016 through 2021 for $65,000.

Like any offer that is submitted to the Commissioner, it was initially processed by the Centralized Offer in Compromise Unit (COIC). *See* Internal Revenue Manual (IRM) 5.8.2.1.6 (Sept. 22, 2020). While this OIC was still before COIC, the Commissioner sent Mission three notices of his intent to levy—one each for the taxes owed for 2016–19, 2019–20, and 2021. Mission responded by submitting three separate collection-due-process (CDP) hearing requests. For its 2021 tax bill, it asked for the IRS to put the debt into currently-not-collectible status or grant the OIC that would cover all years.

The Commissioner's Appeals officer held Mission's CDP hearing for tax year 2021 in late 2023. As it had for the previous years, Mission did not check the box stating that it wanted to challenge its underlying tax liability when it asked for this hearing. It did check the boxes stating that it couldn't pay because of financial hardship and that it would like a collection alternative. The Appeals officer again denied Mission's plea for an OIC. The notice of determination that she issued was, however, quite unlike the first two that we analyze in the reviewed opinion that we issue today. There are blatant mistakes in it, as she incorrectly stated that Mission's attorney had asked for an installment agreement, and not just an OIC or currently-not-collectible status. But it's the *reasoning* used that separates this notice from the others. She first determined that Mission could not challenge its tax liability for 2021 because section 280E "disallows all expenses related to the operation of a medical marijuana dispensary deemed legal under State but not Federal law." She then added that Mission didn't qualify for any collection alternative because it hadn't submitted "the requisite financial information necessary to facilitate a determination of your ability to pay." She also "noted" that Mission was not current with its estimated-tax payments.

## OPINION

The parties submitted the case for decision under Rule 122. They agreed on the contents of the administrative record, and they agreed that the scope of review here is limited to that record. *See Keller v. Commissioner*, 568 F.3d 710, 718 (9th Cir. 2009), *aff'g in part* T.C. Memo. 2006-116, *and aff'g in part, vacating in part* decisions in related

**[*3]** cases. Our standard of review under section 6330 is abuse of discretion, which means we reject an agency's decisions that adopt "an erroneous view of the law or a clearly erroneous assessment of the facts." *Fargo v. Commissioner*, 447 F.3d 706, 709 (9th Cir. 2006) (quoting *United States v. Morales*, 108 F.3d 1031, 1035 (9th Cir. 1997)), *aff'g* T.C. Memo. 2004-13. We apply this standard only to the rationale the agency used in its notice of determination. *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947); *Antioco v. Commissioner*, T.C. Memo. 2013-35, at *25 ("[a]pplying Chenery in the CDP context means that we can't uphold a notice of determination on grounds other than those actually relied upon by the Appeals officer").

The Appeals officer did not reject Mission's offer to settle its 2021 liability based on its ability to pay. There is a single line in the case-activity record that says, "T/P [taxpayer] is challenging underlying liability resulting from the disallowance of all expenses related to the legal operation of a medical marijuana dispensary under State law but not under Federal law. POA [Mission's attorney] failed to address any other issues in his appeal."

This seems just plain wrong to us. Mission specifically did not check the box that would've indicated it was challenging its liability. And the same case-activity record identifies the collection alternatives Mission actually proposed. Mission's lawyer made it plain in every hearing that this case was meant to be about the computation of his client's reasonable collection potential. But the Appeals officer's notes don't reflect this stance at all. Misinterpreting a taxpayer's argument means the Appeals officer was not considering an issue raised by the taxpayer. This is an abuse of discretion all by itself. *See generally* § 6330(c)(2); *see also Dodd v. Commissioner*, 118 T.C.M. (CCH) 186, 188 (2019).

We also take issue with one of the other reasons the Appeals officer gave for rejecting Mission's OIC—the company's failure to hand over financial documents. Mission's focus was its prior OIC. COIC had already done a financial analysis for it, using the same profit-and-loss statement and bank records that Appeals requested from Mission. Those financial records are actually in the administrative record that we have and would seem to be current, even as defined by the Commissioner himself. *See* IRM 5.8.5.3(2) (Sept. 24, 2021) (providing that financial information is presumed current if it is not more than 12 months old). This leads us to doubt the veracity of the case-activity record's statement that there was "no financial information included

**[\*4]** w/admin file." And it makes us doubt the veracity of every contested entry in that record to the extent it led to denying any consideration of Mission's OIC for the 2021 tax year.[2]

We conclude that the Appeals officer abused her discretion in sustaining the IRS's determination to collect this tax debt when she did not address the arguments that Mission actually made.

*Conclusion*

To reflect the foregoing,

*An appropriate order remanding this case for a supplemental hearing will be issued.*

---

[2] Our skepticism extends to the Appeals officer's assertion that Mission was not current in its estimated-tax payments for 2022. If true, that would make denying Mission's OIC a matter of routine—we have repeatedly held that there is no abuse of discretion in rejecting a collection alternative for a taxpayer who fails to be current in its estimated-tax payments. *See, e.g.*, *Rehn v. Commissioner*, 111 T.C.M. (CCH) 1244, 1246 (2016). But the Commissioner himself included a proposed finding of fact that Mission had paid its 2022 estimated tax. And as the CDP process went into 2023, the settlement officer's case-activity record asserted both that Mission was deemed "not in compliance with ES requirements" for that year, and that Mission was in compliance— both on the same page.